Good morning, Your Honors. I'm Tony Arjo, the counsel for Ms. Carter. I think this case starts with the Supreme Court decision, Sullivan v. Hudson, which I ruled that an ALJ's deviation from a court order on remand is legal error. I think in this case, the ALJ in its second decision did deviate from the district court order. Now, you know, the question then becomes whether there is any justification for such a deviation. It ended up to the district court to decide whether there was a violation of the court order since the district court remanded it. Well, in the first instance, but I think that can be overruled by the court of appeals. If, you know, the district court misinterpreted the basis of its evaluation of the second ALJ decision. I mean, if this court remands something to the district court and the district court does something, didn't it up to this court to decide whether it was within the ambit of the remand? Subject to further review, yes. But, you know, in my brief, I think the district court, you know, misinterpreted the regulations when it, you know, allowed the ALJ to redo its findings on the second ALJ, the second decision, relying on, for example, the regulations that govern the continuing disability review in cases, you know, where a person's on disability and there's new evidence that they've improved, which is not at all relevant to this case. I think the issue is are you claiming that an L4, L5 herniated disc with some sciatica is an immutable characteristic and cannot get any better? Oh, not at all. Our position is that the ALJ after the remand by Judge Breyer determined that she's gotten better. Well, the ALJ, for the period after his original decision, he was certainly free to determine that Ms. Carter had gotten better. And but that's not what the ALJ did. Let me ask you this. Maybe we can cut through to the issue that's bothering me. The ALJ first finds that she can do moderate work, which is 25 to 50 pounds lifting. Judge Breyer says there's no substantial evidence, but she can do light work, 10 pounds repetitive lifting, 25 occasional lifting. Judge Walker, then the ALJ, finds, as the first ALJ did, and then Judge Walker ratifies that. OK. One thing is constant. She could always do light work, 10, 25 pounds. Light work allows her to be a cashier in a self-service gas station. There are 20,000 jobs available in the local economy for that, in the nationwide economy for that. She's got residual functional capacity. She's not disabled. End of story. Forget about all the errors. Forget about the law of the case. Forget about everything else. Why shouldn't I decide that way? Well, I think if you go back to the original ALJ decision, where we first, you know, we got the remand on the basis that all the jobs cited by the V.E. in the first case, the V.E. described them as sedentary jobs. Now, assuming that she... That's 10, 25 pounds, right? 10 pounds continually, 25 pounds occasionally, right? Well, there were that. They also, the ALJ on the first decision, ruled that she would require this ability to sit and stand, alternate sitting and standing, which further limits... You can certainly do that in a gas station. Well, under, if she was limited to only sedentary, unskilled jobs at her age at that time, she would be found disabled under the grids. And the V.E. only cited sedentary jobs in the first decision. That's why Judge Breyer ruled that the only issue left was transferable skills, because, you know, he found that under the ALJ's first RFC and the V.E.'s description of the jobs available... Other than the first six months of her claim, she was over 50. She was 51 at the time of the first ALJ decision. Your position is that she would be disabled under the grids, and that means that... In the absence of transferable skills, yes. Why can't she have transferable skills? Well, that was the issue that the first remand was set to resolve, but the ALJ never resolved that issue. He just, in effect, held a de novo case starting all over and came up with a different RFC for the entire period. He was free to find, say, by 2004 that Ms. Carter had improved and made findings of that effect. But there was no new evidence relating to the period from September 2002, when he first made his RFC finding, back to 2000, when the disability began. To justify any change in the RFC. What was her work history before she was disabled? She was a clerical worker. Well, she had transferable skills to become a cashier in a self-service gas station. Well, that's an unskilled job, so transferable skills wouldn't be relevant. That's even worse for you, because then you don't have to find transferable skills. At age 50, if she was able to do all sedentary, unskilled work, she would still be disabled under the grids. But if she had transferable skills, she wouldn't be disabled. Correct. And she had been a clerical worker, and a gas station attendant is a clerical worker. Well, you can't transfer skills to unskilled work.  It never was resolved by the Court, because, I mean, the ALJ just started all over again and came up with a new RFC. What did you hope we would decide when you came with your appeal? What did you want this Court to resolve? Well, at a minimum, that, you know, absent, you know, exceptional circumstances like new evidence relating to the period of 2002, that the ALJ was bound to follow the Court the first remand with following the implications of its first RFC finding for sedentary work and then deal with the issue of transferable skills at that point. Now, you know, the first, the Court can't decide issues in the future, so for the period after 2002, by, you know, 2005, if there's new evidence, that issue can be looked at, whether there's medical improvement. But... Are you trying to get a window of disability benefits from the date of the first hearing until the date of the second hearing? Well, that would be the minimum. Then the other issue would be open at that point. Well, the ALJ has already found that she's able to work as of the time of the evidence before it on the second time around, right? Yeah. Yes. But, well, yeah. Conceivably, this Court could just remand for that specific period. Why would we remand? We've got a complete record, haven't we? Well, the issue of transferable skills was never resolved. You know, if we, you know, if we can resolve that, then there'd be no necessary remand for the period up to 2002. What would be the relevance of determining whether she had transferable skills? Well, at the time of the first ALJ decision, under his RFC, Judge Breyer found that she would be disabled under the grids in the absence of transferable skills. That was the only issue remaining at that point. So the ALJ on the second time around found that she was really better off than Judge Breyer thought because she could lift heavier weights and found she could do moderate work, and therefore she had residual skills or residual functional capacity and she was not disabled. What's wrong with that? Well, the problem is that nothing had changed regarding, you know, the initial period that was adjudicated from 2000 to 2002. What do you mean changed? She's gotten better. She should be happy. Well, that wouldn't change the fact that if she was disabled for that two-year period at a minimum, that she was entitled to benefits for that period. Okay. Thank you very much. All right. Thank you. We'll give you a minute for rebuttal. Okay. Ms. Turk, do you agree with counsel that the ALJ erred on remand by not determining the issue of whether this applicant had transferable skills? Well, Gene Turk for the Commissioner of Social Security. No, I don't believe the ALJ erred. The ALJ was mandated under the regulations to provide a new hearing, take new evidence, and perhaps consider new issues. In this case, the claimant participated in a new hearing and, in fact, submitted new evidence to the ALJ. So for the claimant to say now that that was somehow an error for the ALJ to consider this additional evidence, I think that's not equitable. In terms of the district court, the district court had the authority to review its own judgment and determine that, indeed, the ALJ acted in a consistent manner with not only the remand order, but also in compliance with the Federal regulations. So, no, Your Honor, I think the ALJ did exactly what the ALJ should have done. In terms of several times you commented that the claimant got better, I want to say that the early evidence in the record, a number of times plaintiff was found to have, by one consultative examiner, no limitations. This was an individual who came in limping. The claimant came in limping and then was observed to be walking briskly to her car after the examination. What period of time was that? That was Dr. Brody, and that was from June of 2001. Okay. That's at your 9394 excerpt of record. Okay. So that was before the remand. That was before the remand. I'm saying that it isn't that she got better. It's really that the earlier She was still the same. I'm sorry, Your Honor. She was still in the same condition she was in earlier. I'm saying that she could probably always do a moderate level of exertion. The at that later, Dr. Hahn found light work, but he based his, although his examination was fairly normal, he based his finding of light work on the complaints of the claimant, based on her complaints of pain, I think is what he said. And later on, of course, we find that this claimant is not truly credible. She's 50 to 54 years old, and she has low back pain. She's active in the community. She's a coach. She manages some sort of a soccer consortium. She's taking care of her son. She admitted that she does housework. So, again, I think there's some question to really what claimant's, the extent of claimant's original limitations were. And these particular doctors in that earlier time found that she either had no limitations or she could do medium work. Again, the district court determined that no, the ALJ acted consistently with its remand order, and the district court has the discretion to determine whether the ALJ acted in accordance with that order. Once they decided that the ALJ was acting consistent with the order, then the only issue before the court was to determine whether substantial evidence supported the ALJ's determination. And in this case, the court found it did. And I would ask you to do the same. Was there some new evidence about her condition following the remand? Yes, Your Honor. There was an X-ray that was presented, which showed no limitations, and then an MRI, which is a little bit more sophisticated. But the MRI found no nerve root impingement. Now, I'm not going to come again. I'm sorry, Your Honor. There's a 1997 MRI showing Dr. Hahn finds in August 2000 that a 1997 MRI has left compression on L5S1. I believe that that was never confirmed. I thought it was an impression of nerve root impingement. It was Dr. Hahn reading the MRI. It wasn't, which is always the case. But you cite another MRI which says that there is no nerve root involvement. Yes, Your Honor. When was that taken? That was from August of 2004, and that's at your Excerpts 258. Excerpts 258. And who was the doctor reading that? It was a radiologist, I believe. Well, what was the radiologist's name? Offhand, I don't know that, Your Honor. All right. Again, I could pull out the ---- Okay. We'll take a look at it. Okay. Again, Transcript 258, or Excerpts of Record. Now, Dr. Chu on the subsequent examination said she could do medium work. Yes, Your Honor. That was in November of 2003. Is that the basis for the ALJ's decision that she could do that? Yes, Your Honor. I believe the ALJ looked at the new evidence which would seem to put in dispute the 1997 MRI, and looking back at the other doctors and the reliability and consistency of their findings determined that, indeed, a plaintiff could do medium work. When looking at the doctors who found she could do light work, he found inconsistencies in their reports. There was some ---- in the latest report from November of 2004, the Dr. Klein specifically mentioned that claimant was very resistant to the examination and he was prevented from making a proper finding. He did find light work, but the ALJ discredited that opinion because of that ---- those doubts by Dr. Klein. The same thing with Dr. Coomer. He, too, found light work, but, again, he was operating off of the 1997 MRI and he found inconsistent straight leg raises and also a superficial reaction to palpation. So when the doctor examined her back, he felt that her reaction to his examination was a little extreme. He was only superficially testing her and she was complaining of pain. Were any of these doctors, treating doctors or were they all examining doctors? These were all examining doctors. And I also want to say that they found good motor skills, good muscle strength, and those same findings were found by claimant's treating physicians. Again, new evidence was submitted by claimant regarding her examinations from her treating physicians. And those treating physicians also consistently, even when she was complaining about her back pain, consistently found good motor strength and no sensory loss. Those same conclusions were found by every one of the consultative physicians. Well, Dr. Hood was a treating physician. I'm sorry, Your Honor, I didn't hear. Dr. Hood was a treating physician and gave her a total disability slip. I believe it was limited to a certain number of months. I don't have the accurate number of months. He provided acupuncture care for her. Electroacupuncture. Explain that to me. I wish that I could, Your Honor, but I can't Google it. I mean, I've heard of it. I know about acupuncture, but electroacupuncture, I thought that was kind of interesting. But again, Your Honor, getting back to the decision here, the district court looked at its remand order, found that the ALJ had acted consistently. The claimant participated in a new hearing and presented new evidence. There was no manipulation of the evidence by the ALJ. The claimant was the one who presented that evidence. And the district court determined that based on all the evidence, the ALJ made the proper decision, and that substantial evidence did support the determination that this claimant was not disabled. Is there a point at which she comes under the grid and would become disabled, as her counsel says? Yes, Your Honor. So medium work, she's not disabled. Light work, she's not disabled. Sedentary work, if she did not have transferable skills, she would be disabled. She would be disabled. And there's no evidence about transferable skills, right? No, Your Honor. It was not necessary at the second hearing because, again, the ALJ determined and the evidence pointed to medium, medium work. However, even if she had light work, again, she would not be disabled given her age. Okay. And the transferability of skills would not be an issue either. And even under her best evidence, there's no evidence here, you're saying, showing anything other than light work skills or medium? I say the evidence would support a finding of medium exertional level, Your Honor. I mean, if you took her evidence and the light most favorable to her, it would even be light there. That's a good point, Your Honor, yes. And I would then point out that nowhere in the record is there support that she's limited to sedentary work. Okay. Did Judge Breyer find that she was able to do light work? Judge Breyer determined that the ALJ's findings, so Judge Breyer determined that the ALJ's findings to limit claimant to sedentary work and then went on from there. Okay. Thank you. Thank you, Your Honor. No further questions. Thank you for hearing me out. You wish to rebut? Oh, geez. We'll give you a minute. Okay. Two points. Counsel makes the point that Ms. Carter participated in the second proceedings. By then it was 2005. The whole issue, the period between 2002 and 2005 was up for evaluation at that point. We had, she had no choice but to submit evidence regarding that period to have any chance for disability. Second, I disagree with the assertion that Dr. Chu found that Ms. Carter could perform medium work. He found that she could perform medium lifting but must be allowed to periodically alternate sitting and standing to relieve pain and discomfort. That limitation would restrict the range of medium work. And if the judge had accepted that, he would have had to obtain a V.E. testimony at the second proceeding. And, in fact, do you admit that if she can do light work or more, that you lose out unless we can go back and resurrect Ms. Carter? Yes. She could do a full range of light work and there's no alternate sitting and standing requirement. She would lose. All right. Thank you. Thank you very much. You know, in the future, you can sit where you like. But that side is reserved for you if you want to use it. Okay. Thank you. All right. All right. The rest of the cases have been submitted on the briefs without argument. So that concludes our calendar for the day and for the week.
judges: Farris, Bea, Siler